[Civ. No. 9305. First Appellate District, Division Two.—May 29, 1934.]

JOHN WILSON et al., Respondents, v. GENERAL WATER HEATER CORPORATION (a Corporation), Appellant; R. L. HINCKLEY, Defendant.

G. C. DeGarmo and W. M. Crane for Appellant.

Gibson, Dunn & Crutcher, H. F. Prince, A. E. Pennekamp and Robert F. Schwartz for Respondents.

NOURSE, P. J.—In the year 1919, one Bastian entered into a written contract with the defendant Hinckley and three others for the formation of a corporation to manufacture and sell a patented combination water heater. Bastian, as owner of the patent, transferred his interest to the corporation in consideration for specific amounts of common and preferred stock and a royalty of two per cent of the sale price of the products of the corporation. In further consideration Bastian was also employed as manager and continued as such until April, 1921, when he sold all his preferred stock and the greater portion of his common stock to one Smith. Some time prior to the year 1927 the defendant Hinckley acquired from Smith all his interest in both the common and preferred stock of the corporation. The plaintiffs each owned one-third of the stock of a rival corporation, in which the defendant Hinckley owned the remaining one-third. In 1927, these three entered into a writing agreeing that the second corporation should be dissolved and that the plaintiffs should be given in exchange for their shares in the rival corporation a specified number of shares in the defendant corporation. The business of the two concerns was thereupon merged in the defendant corporation. At that time the defendant Hinckley either owned or controlled 1800 of the 1825 shares of the outstanding

common stock of the defendant corporation. Prior to this merger he had received from the corporation quarterly payments on account of the royalty agreed to be paid to Bastian apportionate to his holding of the capital stock of the corporation presumably on the basis of having acquired the royalty rights of Bastian through the purchase from Smith. Evidence was offered that prior to the execution of the written agreement heretofore referred to, ·the defendant Hinckley promised on behalf of the defendant corporation that the latter would pay to each plaintiff such proportion of this two per cent royalty as their holdings in the defendant corporation bore to the outstanding common stock of the corporation. After the merger was completed and the transfers of stock had been made the defendant corporation paid to each plaintiff three quarterly dividends on account of such royalty. Payments were then discontinued, the corporation taking the position that the oral contract of Hinckley with the plaintiffs was not binding upon the corporation. This action was thereupon instituted by the plaintiffs against the corporation and Hinckley to recover portions of the unpaid royalty and to have a determination made covering the rights of the plaintiffs to participate therein in the future. Judgment went for the plaintiffs in accordance with the terms of the contract against the corporation alone and the corporation prosecutes this appeal.

We will confine our discussion to the statement of questions involved found in appellant's opening brief assuming, as the parties seem to have assumed throughout the litigation, that the contract of the corporation to pay a percentage of the royalty to some of its stockholders was a valid contract. Appellant makes a general attack upon the findings as being insufficient to support the judgment because they find that the appellant was obligated to pay the royalty to Bastian and that at the time of and as one of the conditions of the merger it agreed to pay the plaintiffs a percentage of such royalty. This, it is said, is but a conclusion of law and not a finding of any ultimate fact. But all the ultimate facts necessary to support this finding were conceded. That is to say, the appellant did not question the· making of the contract by its co-defendant Hinckley, but it contended that the evidence of the oral nego-

tiations was inadmissible and that the contract was a contract of Hinckley and not of the corporation.

Secondly, the question is asked whether, if a corporation issues stock to an owner of patents and agrees to pay him a royalty on sales of his products in consideration of the transfer of his patents and his services as general manager, is the royalty right pertinent to the stock or is it a personal right which does not pass to the transferee of the stock? The answer to the question does not determine any issue involved. Assuming that the royalty right is personal and does not pass to the transferee of the stock the corporation may nevertheless have acquired the patentee's rights in the royalty and may thereafter have agreed to pay the royalty to another. Putting it in another way, the question of the patentee's rights in the royalty is one between the patentee and the corporation and is beside the issues here involved, which are based upon a contract between the corporation and the plaintiffs wholly independent of the rights of the original patentee. Further, the plaintiff asks in this statement of the questions involved whether the royalty ceases upon the termination of the services of the patentee as manager. The answer to this question is likewise outside the issues involved, because, whether the corporation is still obligated to pay the royalty to the patentee is immaterial to a question of the liability of the corporation under its contract with the plaintiffs.

The third question stated by the appellants is as follows: "If two corporations are merged, is evidence of negotiations and oral understandings admissible, when a subsequently executed written agreement between them appears to contain the terms and conditions of the merger?" Here again an answer to the question would not serve to cover any issue involved in the appeal because the statement does not conform with the undisputed evidence in the record. The written agreement referred to by the appellant was one executed by the plaintiffs and the defendant Hinckley alone as owners of all the stock of the corporation which was subsequently merged with the appellant. This merger was effected by an oral agreement which was made independently of the written agreement referred to. In the written agreement between these stockholders none of the undertakings involved in this litigation was covered. The

case is therefore merely one based upon an oral contract made by the holder of the majority of the issued stock of the appellant corporation who was at the time in full control of the business of the corporation. His authority to make the contract is not questioned in the evidence but if question were to be raised it would be answered by the undisputed evidence that the corporation ratified and affirmed the contract. Hence the only issue involved is whether a corporation, having accepted the benefits of a contract made by its president and controlling stockholder, is estopped from denying its contract, no question being raised as to the power of the corporation to contract with the parties concerning the subject matter involved. The liability of a corporation under such circumstances cannot be doubted. (6a Cal. Jur., sec. 676.)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.